SIMMONS NATIONAL BANK *v*. DILLEY FOUNDRY COMPANY.

Opinion delivered June 13, 1910.

1. CORPORATIONS—AUTHORITY TO CONTRACT.—Both at common law and under Kirby's Digest, § 839, a corporation can make no contract which is not authorized by its charter, either expressly or by fair implication. (Page 371.)

2. SAME—AUTHORITY TO BECOME SURETY.—Under Kirby's Digest, § 839, a business corporation has no power to divert its funds or assets from the purposes for which it was created, and therefore cannot become a surety for or otherwise lend its credit to another person or corporation. (Page 372.)

3. SAME—POWER TO SIGN ACCOMMODATION PAPER.—The officers of a corporation have no power to bind it by the execution of negotiable paper for the accommodation of another person or corporation, and it cannot be held liable thereon when it is known by the payee or holder that the paper was executed for accommodation merely. (Page 372.)

4. BILLS AND NOTES—NOTICE.—Knowledge that a note is in the hands of one of the joint makers to be negotiated for his benefit is sufficient to give notice that the others signed for accommodation merely. (Page 372.)

5. CORPORATIONS—AUTHORITY TO SIGN ACCOMMODATION PAPER.—If a private business corporation may become an accommodation indorser, provided all the stockholders assent and no creditors are injured, the general manager of such corporation has no authority to sign such accommodation paper on its behalf without the assent of the stockholders. (Page 373.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*Young & Rowell* and *N. T. White,* for appellant.

Accommodation paper of a corporation is good in the hands of a *bona fide* holder if the corporation had, under any circumstances, authority to issue commercial paper. 28 Minn. 291; 156 Ind. 487; 101 Mass. 57. Appellant is a *bona fide* holder. 97 Mass. 494; 62 Ark. 41; 3 Thomps. on Corp. 141; 26 N. Y. 505; 26 Barb. 23; 69 Ark. 147; 65 Ark. 204; 2 Mo. App. 299. Stockholders and directors having knowledge of the corporation's indorsement are estopped to complain. 3 Cook on Corp. 2072; 97 Fed. 723; 122 N. Y. 165; 110 U. S. 7. And the same rule prevails in Arkansas. 62 Ark. 42; 65 Ark. 543; 69 Ark. 141; 67 Ark. 542; 85 Ark. 185.

*Bridges, Wooldridge & Gantt,* for appellee.

The contract was *ultra vires* and therefore void.  21 How. · 441; 131 U. S. 371; 139 U. S. 56; 101 U. S. 83; 130 U. S. 22; 167 U. S. 362; 160 U. S. 514; 165 U. S. 538; 10 C. C. A. 415; 62 Fed. 356; 185 Ill. 37; 50 L. R. A. 765; 70 Ia. 541.  A plaintiff must prove actual authority on the part of the corporation defendant to indorse the paper before he can recover.  95 U. S. 558; 98 Am. St. R. 949; 117 Wis. 569; 94 N. W. 293; 116 N. Y. 284; 72 Atl. 44; *Id.* 439; 97 Fed. 723; 30 C. C. A. 409; 86 Fed. 742.  The same rule applies to partnerships.  129 U. S. 372; 18 Wend. 466; 159 N. Y. 194; 17 Ia. 567; 40 Ark. 551; 52 Ark. 556.

FRAUENTHAL, J.  This was an action instituted by the Simmons National Bank to recover upon two promissory notes. One of these notes was for $3,000, and was dated November 2, 1908, and was signed by F. L. Dilley as the maker thereof.  The other note was for $5,000, and was dated December 31, 1908, and was signed by Leola Lumber Company as the maker thereof. Both notes were made payable to the order of the Simmons National Bank four months after date, and were indorsed in blank by the Dilley Foundry Company by F. L. Dilley, treasurer. The latter note was also indorsed by F. L. Dilley.  The action was instituted against the makers and indorsers of the notes; but no defense was made thereto except by the Dilley Foundry Company.  The Dilley Foundry Company in its answer alleged that it was a corporation organized under the laws of the State of Arkansas, and that the indorsement of its name upon said two notes was made without authority; that the notes were executed without benefit or consideration to it; and that it was solely an accommodation indorser thereon.  It pleaded that said indorsements were *ultra vires*, and that it was not legally bound thereby.  The uncontroverted testimony adduced upon the trial presents substantially the following case:

The Dilley Foundry Company was a domestic corporation organized in 1892 for the following purpose as set out in its articles of incorporation:  "The general nature of the business proposed to be transacted by this corporation is to manufacture iron and brass work and to repair and sell machinery."  F. L. Dilley was the secretary and treasurer of said corporation, and from the date of its organization had complete control and

management of its assets and business. He was held out to the world by its board of directors as having, and the testimony tended to show that he actually had, authority to transact all business and make any and all contracts for the corporation in carrying out the purposes for which it was formed. But he did not have any authority to execute in its name any contract by which it became surety or guarantor for any other person or corporation, or to make or indorse commercial paper for the mere accommodation of another person or corporation. F. L. Dilley was the president of the Leola Lumber Company, which was also a domestic corporation, but it was an entirely separate and distinct corporation, and the evidence does not indicate that any person other than F. L. Dilley was a shareholder in the two corporations. The Dilley Foundry Company, F. L. Dilley and the Leola Lumber Company had been doing the greater part of their banking business for several years prior to the execution of the notes herein sued on with the plaintiff, but their business and accounts with it was done and were kept separate and distinct.

In October, 1907, the plaintiff made a loan to the Leola Lumber Company and to F. L. Dilley. Thereafter there came on a general financial depression throughout the country, and in February, 1908, when the financial panic had somewhat subsided, the Leola Lumber Company applied to plaintiff for an additional loan. On February 15, 1908, plaintiff loaned to the Leola Lumber Company $5,000, and therefor took a note signed by that corporation as maker with the indorsement thereon in blank by F. L. Dilley and Dilley Foundry Company. The cashier of plaintiff testified that this money was borrowed by the Leola Lumber Company, and was paid to that corporation by placing same to its credit, and that this was drawn on from time to time by its checks. On February 4 plaintiff loaned to F. L. Dilley $3,000, for which it took a note signed by F. L. Dilley as maker with the indorsement thereon in blank by the Dilley Foundry Company. The Dilley Foundry Company received no benefit or consideration for the indorsement of these two notes, but its indorsements thereon were solely for accommodation. Subsequently these two notes were renewed from time to time in the same manner, and this suit is instituted on such renewal notes.

Upon the trial of the case the lower court directed the jury to return a verdict in favor of the Dilley Foundry Company, which was done. The plaintiff has appealed to this court from the judgment entered upon that verdict.

F. L. Dilley was the manager of the Dilley Foundry Company, and he had authority to transact generally the business of that corporation, and to bind it by the execution of any contract within the scope of the purposes for which it was created; but he had no power, and, under the evidence, no authority, to bind it by any contract made for any other purpose. Ordinarily, a corporation itself can only do those things which are necessary to carry into effect the purposes for which it was organized. It may enter into contracts that may be fairly regarded as incidental to carrying out those purposes; but it can do no act, and can make no contract, which is not authorized by its charter, either expressly or by fair implication. In the case of *Thomas* v. *West Jersey Rd. Co.,* 101 U. S. 71, it is said: "Conceding the rule, applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." In the case of *Central Trans. Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, after reviewing the various decisions of the Supreme Court of the United States relative to the powers of corporations to make contracts, Mr. Justice Gray, speaking for the court, sums up the result as follows: "The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: the obligation of every one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subjected to risks which they have never undertaken; and above all the interest of the public that the corporation shall not transcend the powers conferred upon it by law. * * * These principles apply equally to companies incorporated by special charter from the Legislature and to those formed by articles of association under general

laws." The general rule is well settled that the power of a corporation to make and take contracts is restricted to the purposes for which it is created, and can not legally be exercised by it for other purposes. *City Elec. St. Ry. Co.* v. *First Nat. Bank,* 62 Ark. 33; *Pittsburgh, C. & St. L. Ry. Co.* v. *Keokuk Bridge Co.,* 131 U. S. 371; *McCormick* v. *Market Nat. Bank,* 165 U. S. 550; *California Bank* v. *Kennedy,* 167 U. S. 363.

The statutes of this State, under which the corporation was formed, and which specify its powers, provide (Kirby's Digest, § 839): "The purpose for which every such corporation shall be established shall be distinctly and definitely specified by the stockholders in their articles of association, and it shall not be lawful for said corporation to direct its operations or appropriate its funds for any other purpose."

It follows from this that no corporation has the power to divert its funds or assets from the purposes for which it was created, and it therefore has not the power by any form of contract to become a surety for or otherwise to lend its credit to another person or corporation. It has the power to make all contracts necessary or incidental to its own business; and therefore a corporation organized for the purpose of carrying on a manufacturing business, such as the Dilley Foundry Company, has the implied power to borrow money and make negotiable paper for use within the scope of its own business; but it has no power to become a party to a bill or note for the accommodation of another person or corporation. The officers of a corporation have no power to bind it by the execution of such accommodation paper, and it can not be held liable thereon when it is known by the payee or holder that it was executed only for accommodation. 3 Thompson on Corporations, § 2225; *West St. Louis Savings Bank* v. *Shawnee County Bank,* 95 U. S. 557; 7 Cyc. 679; 10 Cyc. 1115; *El Dorado Improvement Co.* v. *Citizens' Bank,* 85 Ark. 185; *Park Hotel Co.* v. *Fourth Nat. Bank,* 30 C. C. A. 409; *Owen* v. *Storm,* 72 Atl. 441.

But it is urged that the plaintiff is protected herein because it was a *bona fide* holder of the paper, and acquired it in the usual course of business and for value. But, before one can become a *bona fide* and innocent holder of commercial paper, it must also appear that it was acquired without notice or knowl-

edge of defenses or circumstances which would put him on inquiry of such defenses.

In 3 Thompson on Corporations, § 2229, it is said: "The general rule of commercial paper imputing notice of infirmities to a holder apply equally to the holder of paper accepted or indorsed by a corporation for accommodation. If the circumstances are sufficient to suggest inquiry which would lead to a knowledge of the fact, then he is not regarded as an innocent holder of such paper; and a holder with knowledge of its accommodation character can not enforce the paper against a corporation." This notice and the knowledge that is imputed from such notice may arise from any irregularity in the paper or in its chain of title or from the fact that the maker only has put the note in circulation and for his benefit. Thus in the case of *Evans* v. *Speer Hardware Co.,* 65 Ark. 204, we said (quoting syllabus): "Knowledge that a note is in the hands of one of the joint makers to be negotiated for his benefit is sufficient to give notice that the others signed for accommodation merely." Daniel on Neg. Instruments (5 ed.), 380, § 365; *Nat. Park Bank* v. *German-Am. M. W. & S. Co.,* 116 N. Y. 281; *Campbell* v. *Manufacturers' Nat. Bank,* 67 N. J. L. 301; 1 Am. & Eng. Ency. Law 367.

In the case at bar the plaintiff had refused to extend further credit to the Leola Lumber Company and also to F. L. Dilley; and when these two customers applied for further loans, it desired security. It knew that the money thus loaned by it was for the benefit of these two parties, and not for the benefit of the Dilley Foundry Company, because it paid the money to these parties only by placing same to their credit respectively on its books. At the time the money was loaned upon the notes no suggestion or intimation was made that it was for the use or benefit of the Dilley Foundry Company, directly or indirectly. On the contrary, the uncontroverted evidence shows that it was for the use and benefit only of those who appear as the makers of the notes, and must have been so known to the plaintiff. The indorsements of the Dilley Foundry Company upon these notes were therefore made only for the accommodation of those persons who appeared on the notes as the makers thereof, and of this the plaintiff had such notice that the law will impute to

it knowledge of that fact. The officers of the plaintiff bank and F. L. Dilley thought no doubt that he had the power, as a matter of law and incidental to his general authority, to indorse the notes in the name of the corporation, but they knew as a matter of fact that the indorsements were made for accommodation merely. F. L. Dilley had no power, because he was an officer of the company with general authority to manage and conduct its business and affairs, to indorse or sign its name on commercial paper for accommodation. The power of indorsing for accommodation is not incidental to the powers conferred upon the corporation itself organized for a manufacturing business as was the Dilley Foundry Company; nor was such authority incidental to the general authority given to one of its officers in the management of its business. It has been held that a private business corporation may distribute its assets as it sees fit, give away its property, and therefore may become an accommodation indorser, provided all the stockholders assent, and no creditors are injured thereby. But there was no legal or competent evidence adduced on the trial of this case showing that all the stockholders, or even those owning a majority of the stock, of the Dilley Foundry Company, assented to or had any knowledge of the accommodation indorsements of these two notes. The undisputed legal testimony in the case is that they did not know, assent to or authorize these indorsements for accommodation. This act of the officer of the corporation was not, according to the evidence, authorized or ratified by the corporation; and it was therefore beyond his power to bind the corporation by the indorsements. *Louis De Jonge & Co.* v. *Woodport Hotel & Land Co.,* 72 Atl. 439.

It is urged by counsel for plaintiff that it might be inferred from the evidence that the Dilley Foundry Company made the indorsements in order that the makers of the notes might obtain money with which to pay some debt to it, or that the officers of the bank might have thought this, and therefore the jury might have inferred that the indorsements were made for the benefit of the Dilley Foundry Company. But we do not think that there were any facts or circumstances proved in the case from which such inferences could arise. The undisputed evidence shows that the Dilley Foundry Company received no benefit from or consideration for making the indorsements of these

notes; and the plaintiff loaned the money on these notes to the persons who appear thereon as makers and at the time knew that the Dilley Foundry Company indorsed the same solely to secure the payment thereof to plaintiff.

We have carefully examined the testimony adduced upon the trial of this case, and we are of the opinion that under this testimony the lower court was correct in directing a verdict in favor of the Dilley Foundry Company.

The judgment is accordingly affirmed.