GRAND NATIONAL BANK OF ST. LOUIS *v.* TAYLOR.

## Opinion delivered January 23, 1928.

1.  EVIDENCE—RESOLUTION OF BANK AUTHORIZING LOAN.—Where a bank by resolution authorized its officers to effect loans from a named bank from time to time, the fact that the name of the bank's president was affixed thereto by its cashier did not make it inadmissible in evidence, if it was in fact the action of the bank's directors.

2.  EVIDENCE—MINUTE BOOK OF CORPORATION.—The minute book of a corporation, when identified, is competent evidence as to recitals therein, and, even though unsigned, the minutes may be used to prove what took place at the meeting and that a resolution was passed thereat.

3.  CORPORATIONS—FALSE ENTRIES IN MINUTE BOOK.—A corporation is not bound by forged, false, and simulated entries in its minute book, unless, knowing them to be such, it neglects to correct them, and some innocent third person has relied thereon to his prejudice.

4.  CORPORATIONS—EFFECT OF BOOK ENTRIES.—Where a corporation seeks to destroy the effect of entries on its books, which purport to be regular records of proceedings of its directors or stockholders, it must offer testimony of a more conclusive character than such as merely creates a suspicion that there was an irregularity in the manner in which the books were kept.

5.  BANKS AND BANKING—VALIDITY OF RESOLUTION OF BANK.—The resolution of a bank authorizing its officers to effect loans from time to time in the bank's behalf from a designated bank was sufficiently established as being genuine to be admissible in evidence, where no director denied validity of the resolution, and the bank's president admitted it was genuine, though he did not sign it, and the resolution was the only authority by which money was borrowed by the bank or rediscounted from other banks.

6.  BANKS AND BANKING—AUTHORITY TO BORROW MONEY.—Where a bank by resolution authorized its officers to effect loans for the bank from a certain bank, and at the bottom thereof there was a recital that the resolution included all the bank's correspondents, testimony that copies of the resolution were made and sent to other banks, from which the bank obtained loans with the names of the other banks inserted in the resolution, was competent

to show that the directors regarded the resolution as a compliance with Crawford & Moses' Dig., § 700, as amended by Acts 1923, p. 532, § 18, and broad enough to cover borrowing of money from other banks than the one named.

7.  BANKS AND BANKING—VALIDITY OF PLEDGES AND DISCOUNTS.— Under Crawford & Moses' Dig., § 700, as amended by Acts 1923, p. 532, § 18, pledges of collateral security for loans or rediscounts of the bank's paper are prohibited and made void without the action of the bank's directors authorizing the same.

8.  BANKS AND BANKING—AUTHORITY TO REDISCOUNT PAPER.—Under Crawford & Moses' Dig., § 700, as amended by Acts 1923, p. 532, § 18, it is not necessary that there be express authority in the minutes of a bank in each instance that a loan or rediscount is effected by the bank, but the bank may draw a resolution to cover loans or rediscounts to be made during the period of one year.

9.  BANKS AND BANKING—INNOCENT HOLDER OF COLLATERAL.—A correspondent bank rediscounting paper on a State bank under arrangements with the State bank's cashier, authorized by a resolution of the State bank's directors to effect loans and to rediscount paper, in substantial compliance with Crawford & Moses' Dig., § 700, as amended by Acts 1923, p. 532, § 18, became the innocent purchaser of notes before maturity without notice of defenses thereto, and in liquidation of the State bank could claim them and money collected therefrom as against the Bank Commissioner.

Appeal from Franklin Chancery Court, Ozark District; *J. V. Bourland,* Chancellor; reversed.

*Albert D. Nortoni* and *Grover C. Carter,* for appellant.

*Hill, Fitzhugh & Brizzolara,* for appellee.

McHANEY, J. Prior to January 22, 1926, the People's Bank of Ozark was a banking corporation under the laws of Arkansas. On that date its doors were closed and its affairs taken over by the State Banking Department for liquidation as an insolvent institution. L. L. Ford was its president, J. T. Greer vice president, and Finis E. Stockton its cashier and active officer. Like too many small banks, its business was very largely intrusted to and its destiny largely controlled by one man—its cashier, Finis E. Stockton.

Appellant is a national banking corporation of St. Louis, with Mr. W. C. Johnson as its vice president and

cashier.  Johnson, being a friend and acquaintance of Stockton of about ten years' standing, solicited the account of the People's Bank, through Stockton, for appellant.  As a result thereof Stockton went to St. Louis in August, 1925, and, on the 25th, opened an account with appellant, by rediscounting to it notes of customers held by his bank, and receiving a credit of $19,733.55. Said notes were indorsed, ''People's Bank of Ozark, F. E. Stockton, Cashier.''  These notes are not involved in this controversy, as they were all thereafter taken up by the People's Bank before failure, but are mentioned to show the history of the whole matter.

On November 30, 1925, Mr. Johnson, for appellant, wrote Stockton in part as follows:

''Finis, I have been thinking more about handling your entire St. Louis business, and in this connection wish to say that, if you still have bills payable, we would be more than pleased to take this up and carry it for you, and with the view of taking care of your needs for the coming year.  If you would be interested in figuring on the account along this line I will be glad to run down and see you, and feel quite confident that it can be arranged in such a way as would be very agreeable and satisfactory to you, and then, too, in doing business with some one you know it is worth something to feel that when you are in need of an accommodation you can know where to go for it.

''I will be glad to have you think this matter over and advise me, and, if you are interested, will be a pleasure to me to run down and pay you a visit and line the account up.

''Awaiting your reply with the assurance that it is a pleasure to us when we can be of service to you, and with kindest personal regards, I am,

''Yours very truly,

''Vice-Pres. & Cashier.''

On December 8, 1925, Stockton replied as follows:

''Dear Will:  I was glad to get your letter, and had been thinking along the same line myself.  Things have

been coming slow, but it is going to come out all right. I had rather come up and see you, but it will be after the first of the year before I can come. I am sending you a little bunch of notes that I wish you would handle like you did the other ones.

"I am willing to give you the whole St. Louis a/c after the first of the year. We still have $30,000 bills payable, $15,000 in Fort Smith and $15,000 in St. Louis.

"I am checking on you for part of this, and if you cannot handle this $10,051.25 for sixty, give me credit for it temporary, and I will fix it as you wish. I want to see you and go over the whole proposition with you. There would be a personal friendship about doing business with you that would be worth while. We will take up the other customer notes you have soon. This list of notes is some that I have renewed the last few days, and are on some of our best customers.''

Appellant accepted these notes, rediscounted them for 60 days at 8 per cent. and credited the People's Bank with the proceeds, $9,883.73, on December 10, 1925. On January 2, 1926, appellant rediscounted notes for the People's Bank of the face value of $30,882.52, deducting the discount at 8 per cent. for 30 days and crediting its account with the balance. On January 14 and 16 like rediscounts and credits were made on notes aggregating $10,171.95 and $36,075.90, respectively, the credits being $10,104.14 and $35,594.90, respectively. The People's Bank did not execute notes to appellant and deposit its customers' notes as collateral, but rediscounted bills receivable for 30 or 60 days at 8 per cent., with an agreement to take them up at that time. As a result of all these transactions, appellant had on hand, at the time of the failure of the People's Bank, paper of the face value of $69,925.72, of which $36,779.51 in notes were indorsed "without recourse," and $33,146.21 in notes bearing the unqualified indorsement of the People's Bank. During all this time the People's Bank, by its cashier or assistant cashier, was checking out the funds to its credit in appellant bank in the usual

course of business and for the uses and purposes of the bank, and on January 22 the last check was cashed, which resulted in an overdraft on appellant's books of $2,938.67.

When this account was opened in August, 1925, Stockton told Johnson he had authority so to do by virtue of a resolution of the board passed in February, 1925. This resolution is as follows:

"Resolved, that the president, vice president, cashier and assistant cashier are, and each of them is, hereby authorized to effect loans from time to time in behalf of this bank from the National City Bank of St. Louis, Missouri, (the proceeds of such loans to be credited this bank by National City Bank on its books), and to renew or extend the same from time to time; and for such loans (and any and all extensions or renewals thereof) to make, execute and deliver the promissory notes of this bank, and to pledge as collateral security for such loans (and any and all extensions or renewals thereof) any of the bonds, stocks, bills receivable, bills of exchange or other securities of this bank, and that such officers are also respectively authorized to rediscount, from time to time, with the National City Bank of St. Louis for this bank any of the bills receivable, bills of exchange and acceptances held and owned by this bank, and deliver any collateral securing the same, respectively; and may secure such rediscounted paper in the manner above provided for securing loans made by the National City Bank of St. Louis to this bank on its notes or otherwise. The above resolution was passed, and includes all our correspondents."

This resolution appears in the minute-book of the People's Bank in connection with the minutes of a meeting of the board of February 3, 1925. The president of bank, L. L. Ford, says that he did not sign the resolution, or the minutes—that his name was signed by Stockton without his authority—but that he attended the meeting on that date, and that "we passed a resolution like that." It is admitted that, acting under the authority of the above resolution, the People's Bank borrowed money

from the National City Bank of St. Louis, the Merchants' National Bank of Fort Smith, the Bankers' Trust Company of Little Rock, and rediscounted the notes heretofore set out to appellant, with all of which ·Mr. Ford was cognizant, except the dealings with appellant.

After the People's Bank was taken over by the Bank Commissioner, appellant presented its claim to the liquidating agent, exhibiting said notes, for the full amount thereof, with interest, which was disallowed, and the court then made an order directing appellant to deliver same to the liquidating agent, to be held by him in a separate account pending a final hearing by the court, and this order was complied with by appellant. Thereafter it brought this action to recover possession of said notes and for the allowance of its claim to the extent of the notes bearing the open indorsement of the People's Bank. On a hearing the court found "that the plaintiff (appellant) took from Finis E. Stockton, cashier of the People's Bank, *in the form of rediscounts,* notes of the People's Bank," etc., describing the dates and amounts rediscounted and credited, as already set out. And further, "that the amounts so credited to the People's Bank by the plaintiff, in its account with it, were all drawn out from the plaintiff bank by Finis E. Stockton, as cashier, prior to the failure of the People's Bank." The court further found that the cashier did not have authority from the board of directors to "rediscount said notes," and that appellant was not an innocent purchaser thereof, and thereupon entered its decree denying the relief prayed, from which comes this appeal.

1. We are of the opinion that the resolution of February 3, 1925, was sufficiently established to justify its admission and consideration by the court. It is true that it is a typewritten sheet attached by a clip to page 22 of the minute-book containing the minutes of that date, and that the name of the president was affixed by Stockton. That fact, of course, did not add to its evidentiary value, neither did it destroy it, if, in fact, it is the genuine action of the board. If the board in fact passed this

resolution, or one like it, as it did, according to Mr.
Ford, president, then, whether it was properly attested
or not could make no possible difference, as the attesta-
tion is merely evidence of the action taken by the board.
The minute-book of a corporation, when identified, is
competent evidence as to all recitals contained therein,
and, even though unsigned, the minutes may be used to
prove what took place at the meeting, and that a resolu-
tion was passed thereat.    Cook on Corp., 8 ed., vol. 3,
p. 2967.    Of course the corporation would not be bound
by forged, "false and simulated entries thereon, unless,
knowing them to be such, they have neglected to cor-
rect them, and some innocent third person has relied
thereon to his prejudice." 7 R. C. L., p. 155. But, as stated
by the same authority on the same page, "when a corpora-
tion seeks to destroy the effect of entries on its books,
which purport to be regular records of the proceedings of
its board of directors or stockholders, it should offer for
that purpose testimony of a more conclusive character
than such as merely creates a suspicion that there was
an irregularity in the manner in which the books were
kept."    Not only did the directors not deny the validity
of the resolution of February 3, but the president, Mr.
Ford, virtually admitted that it was the genuine action
of the board, although he did not sign it, and that it was
the only authority by which money was borrowed or
notes rediscounted from the three other banks, as there
was no other such resolution in the minute-book.    The
minutes of the next meeting show that the minutes of
this meeting were read and approved. We therefore con-
clude that this resolution was the genuine action of the
board.

2.    The next inquiry is, whether it was authority to
rediscount these notes to appellant, and whether it met
the requirements of the Banking Act, § 700, C. & M. Dig.,
as amended by § 18 of act 627 of 1923, p. 515.    It will be
noticed that the authority conferred in the body of the
resolution was to borrow money and pledge its securities,
and rediscount its bills receivable from and with the

National City Bank of St. Louis. Written at the bottom of the page after the resolution is: "The above resolution was passed, and includes all our correspondents." Appellant offered to prove by Ralph Floyd, assistant cashier, that copies of this resolution were made and sent to the other banks, from which they obtained loans, with the names of such other banks inserted in the place of the National City Bank, to show the authority in the premises, but the court refused to permit such testimony. We think this was competent testimony, as it showed that the board regarded this resolution as broad enough to cover the borrowing of money from banks other than the National City of St. Louis. While appellant was not one of its correspondents at the time the resolution was passed, it did become such, and all the transactions occurred within one year from the date thereof. Neither was a copy of this resolution presented to appellant, and it did not see it until after the failure, yet Stockton assured Mr. Johnson that he had the authority by virtue of this resolution, and we think he did. Section 18 of said act 627 of 1923 reads as follows:

"That § 34 of act 113 of the Acts of the General Assembly of 1913 be so amended as to read as follows:

" 'All pledges or rediscounts made by any bank organized under the laws of this State, as collateral security for money borrowed, of any of the bills, notes, bonds or other assets owned or held by it, without the prior express authority reflected in the minutes in each instance, or for not more than one year of its board of directors, as also all such pledges or rediscounts made from and after the date when this amendment to this act takes effect, the face value of the principal whereof exceeds, at the time when the same are made, in the aggregate, of all of the collateral of said bank then securing the said loan, one and one-half times the principal sum of the said loan, to the extent of said excess shall be in all respects null and void, and the said bank may recover the same or the actual value of such parts thereof as have been disposed of by the lender; provided, that

the said margin of said collateral over the amount of said loan may be increased upon the prior written consent of the Bank Commissioner in each instance.''

The above statute is almost, if not entirely, unintelligible. We have examined the original bill which became act 627, as well as the enrolled copy thereof, and find same correctly copied in the printed Acts. Section 700 of C. & M. Digest, which this section amends, takes the place of, and therefore repeals, reads as follows:

''The president, cashier or other officer or employee shall have no power to indorse, sell, pledge or hypothecate any notes, bonds or other obligations received by said corporation for any money loaned, until such power and authority shall have been given such president, cashier or other officer or employee by the board of directors, a written record of which proceeding shall first have been made; and all acts of indorsing, selling, pledging and hypothecating done by said president, cashier or other officer or employee, without the authority from the board of directors, shall be null and void.''

We hesitate to believe that it was the intention of the Legislature to repeal this wholesome statute, yet it would appear from the language of said § 18 that the only thing made null and void is the depositing or pledging of collateral to secure a loan in excess of ''one and one-half times the principal sum of said loan,'' and then only to the extent of the excess. But we are of the opinion that it may be inferred from the language in the first part of the section that pledges of collateral security for loans or rediscounts of the bank's paper are prohibited and made void without the prior action of the board authorizing it, and we so hold, regardless of the loose manner in which said section is drawn. And we further hold that the act does not require this ''express authority reflected in the minutes in each instance'' that a loan or rediscount is consummated, but that the resolution may be drawn to cover all loans or rediscounts to be made during a period of one year, as this requirement is in the alternative in the act. This section was enacted

for the benefit of the bank, its stockholders and depositors, to prevent, as far as possible, the officers from making way with the assets of the bank for their private purposes. We think it is conclusively shown, and the chancellor so found, that all the funds realized from these rediscounts were properly checked out by an officer of the People's Bank for the uses and benefit of said bank, including the amount of the overdraft, $2,938.67. We therefore conclude that this resolution of February 3, 1925, was sufficient authority to authorize Stockton to rediscount the notes in question, and that it was, to say the least, a substantial compliance with said § 18 of act 627 of the Acts of 1923.

3. We think it necessarily follows, from the conclusions heretofore reached, that appellant was an innocent purchaser of said notes, and acquired same in good faith before maturity and without any notice of any defenses thereto. It is not claimed that there are any defenses to the notes by the makers thereof, but the principal contention made by counsel for appellee is that the notes were negotiated without authority from the board, which we have already decided adversely to appellee's contention. The fact that Stockton drew a draft on the bank in August, prior to having arranged for the negotiation or rediscount of the first notes, is not sufficient to put appellant on notice that Stockton was without authority. And the fact that they did not demand a certified copy of the resolution of February 3, 1925, before accepting any of the rediscounts from Stockton, is explained by Mr. Johnson's confidence in Stockton, who told him such a resolution was passed, and by his desire to get the account of the People's Bank. Good business judgment would probably suggest that to have done so would have been the better course to pursue, but the law does not require the discounting bank to obtain a copy of such resolution, but only that such resolution shall have been passed by the borrowing bank.

We conclude therefore that appellant is entitled to the notes which it delivered to the Bank Commissioner,

and which are yet in his hands, as well as all money collected by the Bank Commissioner thereon, if any, and that the Bank Commissioner, or his agent in charge thereof, should surrender and deliver up to the appellant all such money aforesaid.

The judgment of the chancery court is therefore reversed, and remanded with directions to enter a decree in accordance with this opinion. It is so ordered.