NATIONAL SURETY CORPORATION,
Plaintiff,

v.

CRYSTAL SPRINGS FISHING VIL-
LAGE, INC., et al., Defendants.

No. HS 69-C-24.

United States District Court,
W. D. Arkansas,
Hot Springs Division.

May 20, 1971.

Guy Amsler, Jr., Barber, Henry, Thur-
man, McCaskill & Amsler, Little Rock,
Ark., for plaintiff.

Edward L. Wright, Jr., Wright, Lind-
sey & Jennings, Little Rock, Ark., for
Crystal Springs Fishing Village and
James and Mattie Fowler.

Ray S. Smith, Jr., Wood, Smith &
Schnipper, Hot Springs, Ark., for Ar-
kansas Bank & Trust Co.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

In this action the plaintiff, National Surety Corporation, seeks a judgment in the sum of $30,972.76, plus interest at 6%, alleged to be due on a promissory note signed by defendants, Freeman C. Talley and Wilda Talley, individually, and Crystal Springs Fishing Village, Inc., by Freeman C. Talley, President, Attest: Wilda Talley, Secretary, dated January 3, 1967. The plaintiff also seeks to foreclose the lien of à certain mortgage by Crystal Springs Fishing Village, Inc., executed at the same time of the alleged note, January 3, 1967, by Crystal Springs signed by Freeman C. Talley, President, Attest: Wilda Talley, Secretary, to secure the payment of the note. James M. Fowler and Mattie I. Fowler, were joined as defendants in view of their interest and ownership of the shares of stock in Crystal Springs Fishing Village, Inc. The Arkansas Bank & Trust Company was joined as a defendant as the holder of collateral in the form of certificates for 995 shares of stock for safekeeping. The Arkansas Bank & Trust Company also participated in a loan from the Small Business Administration, evidenced by a promissory note dated February 26, 1959, payable to the bank in the sum of $99,500 in monthly installments of $1,096 over a period of ten years. The payment of this note was secured by a mortgage on Crystal Springs' leasehold interest in twenty-one acres of land described therein and on personal property used in connection with the boat and fishing village business.

The defendants, Freeman C. Talley and Wilda Talley, individually, are in default in this suit and National Surety Corporation is entitled to judgment for the full amount sued on against them individually.

The plaintiff, National Surety Corporation, contends that it is entitled to judgment on the note against Crystal Springs Fishing Village, Inc., and is entitled to foreclosure of the mortgage as security thereon.

The defendant, Crystal Springs Fishing Village, Inc., James M. Fowler and Mattie I. Fowler, contest the contention of National Surety Corporation and insist that the corporation is not entitled to such relief against Crystal Springs because the execution of the note and mortgage by Crystal Springs did not create an enforceable obligation as to Crystal Springs Fishing Village, Inc.

The defendant, Arkansas Bank & Trust Company, is concerned only as the holder of the shares of stock for safekeeping in connection with the security agreement between National Surety Corporation and the Talleys, subject to a prior security interest of the defendants, James M. Fowler and Mattie I. Fowler. The bank was also holding the stock certificates by assignment from Peggy C. Peek of an indebtedness which is not involved in this proceeding. The defendant, Arkansas Bank & Trust Company, has refrained from filing separate brief, but instead relies on the brief filed in behalf of Crystal Springs and the Fowlers.

To better understand the somewhat complicated situation surrounding this controversy, it is necessary to briefly summarize the sequence of events resulting in this litigious proceeding.

Crystal Springs Fishing Village, Inc., an Arkansas corporation in Garland County, Arkansas, was formed on February 27, 1956, for the operation of a boat and fishing village business. It owned a lease of twenty-one acres of land from the Corps of Engineers located on Lake Ouachita. Initially it issued a total of 1000 shares of capital stock. Soon after its formation, the defendants, James M. Fowler and Mattie I. Fowler, purchased 995 shares of the stock with the other 5 shares owned by Roy Bentley. The Fowlers operated the fishing village until October 1, 1960.

On February 26, 1959, Crystal Springs obtained a loan in the sum of $99,500 from the Arkansas Bank and Small Business Administration, evidenced by a promissory note and secured by a mortgage as described hereinabove. The mortgage was duly filed for record and the

defendant, Arkansas Bank & Trust Company, became the serving agent for the Small Business Administration on the loan. Payment of the loan was guaranteed by the Fowlers with final maturity date of the note on February 26, 1969.

On October 1, 1960, the Fowlers sold their 995 shares of stock in the Crystal Springs Fishing Village, Inc., to the Talleys. Roy Bentley continued to own the other 5 shares of stock. At that time Crystal Springs Fishing Village, Inc., consisted of the leased tract of twenty-one acres, a lodge containing thirty rooms, a motel with thirty rooms, a motel with twelve units, a three-room apartment, a seven-room house, a restaurant, eight boat docks with 128 boat stalls, a service dock, three gasoline pumps, a bait sales shop, a motor room, and a trailer park area.

The unpaid portion of the purchase price to be paid by the Talleys to the Fowlers for Crystal Springs was $157,662.65, evidenced by a promissory note signed by Freeman C. Talley and Wilda Talley, dated October 1, 1960, with 5% interest and payable in monthly installments of $525, including principal and interest, commencing July 1, 1961. The 995 shares of stock purchased by the Talleys were pledged to the Fowlers to secure payment of the note. The note was assigned to the defendant, Arkansas Bank & Trust Company, and the certificates for the 995 shares of stock were delivered under a collateral pledge agreement to the bank for safekeeping. The Fowlers reserved the right to declare the unpaid balance due and payable upon default in payment of any two successive installments.

The Talleys took over the operation of the Crystal Springs Village at the time of the purchase on October 1, 1960, and conducted the business until a foreclosure sale on February 22, 1968.

The Talleys became delinquent of their monthly payments on the note in 1966 and on October 18, 1966, the Fowlers exercised their right of acceleration by serving notice thereof on the Talleys. Subsequently, on October 28, 1966, the Fowlers filed suit against the Talleys in the Chancery Court of Garland County, Arkansas, for judgment on the unpaid balance of the note and foreclosure of the pledged stock. On the trial of the case November 2, 1967, the court awarded judgment to the Fowlers in the sum of $131,662.35, plus interest at the rate of 10% per annum from August 1, 1966, and for attorney's fees in the sum of $14,599.95 and ordered foreclosure of the pledge and sale of the 995 shares of stock. The judgment was entered January 19, 1968. On February 22, 1968, at a Commissioner's Sale in accordance with the decree of the Chancery Court the Fowlers purchased the 995 shares of stock and at that time the judgment record in the Foreclosure Decree was endorsed by crediting it with the sum of $145,000 as the proceeds of the sale.

National Surety Corporation is a major bonding company operating throughout the United States. For several years prior to October 1, 1960, when the Talleys purchased the stock in Crystal Springs Fishing Village, Inc., Freeman C. Talley was an experienced pipeline construction operator. In 1965, during the period of time when the Talleys were operating the fishing village, Freeman C. Talley was successful with obtaining three construction contracts. With the award of each contract he was required to supply performance and payment bonds with a corporate surety thereon. The respective amounts of the contracts were $60,595; $34,390; and $34,702.40. The defendant, Arkansas Bank & Trust Company, operated an insurance department and one of the companies represented by it was National Surety Corporation. Through this agency National Surety Corporation executed performance and payment bonds as surety for Freeman C. Talley on his construction contracts in the amounts stated, respectively. The contractor was a sole proprietorship of Freeman C. Talley operating under the name of "F. C. Talley & Co.". Neither Crystal Springs Fishing Village, Inc., nor the Fowlers had anything to do with these contracting ventures.

In June of 1966 Freeman C. Talley was declared in default in the performance of the construction contracts and National Surety Corporation was called upon to discharge its obligations on the bonds it had executed for Talley. As a result of these defaults, National Surety Corporation was required to expend $30,972.76 in completing the contracts and paying suppliers of labor and materials on the jobs.

In an effort to obtain salvage on the loss sustained, National Surety Corporation, acting through its attorney, Guy Amsler, Jr., obtained an agreement with the Talleys. In January, 1967, Mr. Amsler, as attorney for National Surety, tendered to the Talleys at the Crystal Springs Fishing Village certain instruments which he had prepared in representation of his client. It should be recalled that the tender of these papers in January, 1967, was after the Fowlers filed suit for judgment and foreclosure of the pledge of the stock on October 28, 1966.

The instruments delivered by Mr. Amsler, representing National Surety, consisted of:

1. Draft of a note for $31,000;
2. Draft of a mortgage on the leasehold interest in the twenty-one acre tract, improvements thereon, and all machinery and equipment used in connection with the fishing village;
3. Draft of a security agreement and a receipt and escrow agreement.
4. Draft of waiver of notice of special meeting of the Board of Directors of Crystal Springs to be held on January 3, 1967; and
5. Draft of minutes of special meeting of the Board of Directors of Crystal Springs to be held on January 3, 1967.

These instruments were not delivered as executed by the Talleys to Mr. Amsler until May 11, 1967. The delay was occasioned, inter alia, by the mailing of the draft of waiver and the draft of the minutes to Hazel T. Baim, the sister of Freeman C. Talley, who resided away from Garland County, Arkansas. The waiver of notice of a special meeting of the Board of Directors of Crystal Springs to be held January 3, 1967, and the minutes of the purported special meeting of the Board of Directors held on January 3, 1967, contained the signatures of each of the Talleys and Mrs. Baim. They were carbon copies and at the time, May 11, 1967, they were delivered to Mr. Amsler. The corporate seal of Crystal Springs was in the office of their former counsel and at the request of the Talleys Mr. Amsler went to that office and affixed the corporate seal to the promissory note, the mortgage, the waiver of notice and the minutes.

The minutes of the purported meeting of the Board of Directors of Crystal Springs on January 3, 1967, undertook to authorize Freeman C. Talley as President and Wilda Talley as Secretary to execute the note and mortgage on behalf of Crystal Springs. At the bottom of the proposed waiver and of the represented minutes signed by the Talleys and Mrs. Baim as directors under the caption "Certificate" Wilda Talley certified over her signature as "Corporation Secretary" that " * * * the foregoing is a true and correct copy of the original * * * (particular instrument) * * * which is on file in the Corporation Record Book"; but when the Fowlers reacquired ownership of the stock by the foreclosure action no such minutes or waiver appeared in the "Corporation Record Book" of Crystal Springs.

On the same day, May 11, 1967, when the five instruments were delivered to Mr. Amsler, as attorney for the plaintiff, the mortgage to National Surety Corporation was recorded in the office of the Garland County Recorder. Also, on the same day, Mr. Amsler delivered the original and three copies of the Security Agreement to Arkansas Bank & Trust Company. On May 12, 1967, the bank, with some modification, signed a receipt and Escrow Agreement, which was transmitted to Attorney Amsler.

Acting through its attorneys and in its capacity as holder of the certificates, the Arkansas Bank & Trust Company notified National Surety of the pending judicial sale of the 995 shares of stock in the Chancery Court foreclosure action to be held February, 1968, and of an order entered in the foreclosure action directing the bank to deliver the stock of the Crystal Springs Fishing Village, Inc., to the clerk of the court.

After reacquiring title to the 995 shares of stock at the sale on February 22, 1968, the Fowlers took possession and operated the fishing village and subsequently made improvements to and rehabilitated the physical plant and the business. Also, on February, 1968, the Fowlers caused the final payment to be made on the Arkansas Bank-Small Business Administration loan previously described and release instruments were executed and placed of record.

In December, 1968, the Fowlers, while in possession of and operating the fishing village, borrowed $100,430.31 from the Arkansas Bank & Trust Company, securing the payment thereof by liens on the assets of Crystal Springs.

On the 4th day of November, 1966, two days following the trial of the suit of the Fowlers for judgment and foreclosure against the Talleys, Freeman C. Talley filed suit for damages against James M. Fowler in the Circuit Court of Garland County, Arkansas. In February of 1969 the Fowlers entered into an agreement with the Talleys settling their differences. The Talleys acquired transfer of the five shares of stock from Roy Bentley and caused them to be transferred to the Fowlers. The action brought by Freeman C. Talley against James M. Fowler in Garland Circuit Court was dismissed and the judgment in favor of the Fowlers against the Talleys in the foreclosure decree in the Chancery Court was satisfied in full.

On February 1, 1961, the Fowlers sold 995 shares of stock of the Crystal Springs Fishing Village, Inc., to Ray Paschall and Mary Paschall, husband and wife, under a contract in which the Fowlers agreed to defend the claim of National Surety Corporation, now being asserted in this action.

Jurisdiction is undisputed and established in this diversity action.

The parties have submitted stipulation as to the facts with the five instruments referred to herein as exhibits. In addition to the pleadings and exhibits thereto, the plaintiff, National Surety Corporation, and the defendants, Crystal Springs Fishing Village, Inc., James M. Fowler and Mattie I. Fowler, have submitted briefs.

The primary question for determination is whether the execution of the note and mortgage, together with the Security Agreement by Crystal Springs Fishing Village, Inc., created an enforceable obligation under the facts submitted in this case.

First, it is argued that there was a lack of "consideration" in that Crystal Springs failed to receive any benefit or consideration from the transactions. In Exhibit "E" to Stipulation of the parties, which purport to be minutes of special meeting of the Board of Directors of Crystal Springs Fishing Village, Inc., admittedly prepared by Mr. Amsler, attorney for the plaintiff, there is included a statement of Defendant Talley that "he was legally, personally liable for the indebtedness and that, certainly, Crystal Springs Fishing Village, Inc., which benefited, as he had stated, to the detriment of National Surety Corporation, was equitably obligated for the repayment of the money, etc." The minutes further reflect that Talley admitted that the proceeds from the construction contracts were used to pay indebtednesses of Crystal Springs Fishing Village, Inc., to keep it operating and to pay for certain needed improvements instead of being used to pay the expenses of construction.[1] The minutes further reflect that Mr. Talley

---

1. There is nothing in the record or minutes to indicate or show what amounts were used for such purposes.

explained in connection with his private or individual contracts that by the diversion of the funds from the contracts to the benefit of Crystal Springs he defaulted in the performance of the construction contracts and failed to pay for materials and the subcontractors.

■ It is established that the minute-book of a corporation, when identified, is competent evidence as to all recitals contained therein and that the minutes may be used to prove what took place at the meeting. Cook on Corp., 8 ed. vol. 3, p. 2967. Grand National Bank of St. Louis v. Taylor, 176 Ark. 1, 1 S.W.2d 818.

On the question of consideration, the Uniform Commercial Code, Ark.Stats. 1947 Ann. § 85-3-408 (1961 Addendum), provides as follows:

> "Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3-305 [§ 85-3-305]), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. Nothing in this section shall be taken to displace any statute outside this Act under which a promise is enforceable notwithstanding lack or failure of consideration. Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount. [Acts 1961, No. 185, § 3-408.]"

If it is an established fact that the defendant, Freeman C. Talley, diverted funds from his separate and individual contractual obligations and used them for the benefit of Crystal Springs, there can be no doubt as to Crystal Springs receiving benefit from the transaction.

■ The burden of proving apparent authority of an agent or the genuine action of a corporate board, as in the instant case, by a preponderance of the evidence, is upon the person asserting such authority or action. It follows that National Surety must rely upon the genuineness of the action of the board as purported in the minutes under date of January 3, 1967, and has the burden of proof by a preponderance of the evidence.

"Apparent authority must be established by proof of something said or done by the principal on which statement or act the person dealing with the agent reasonably relies. Restatement, Agency 2d, § 8, Comments a-c; 3 Am.Jur.2d, Agency, §§ 73-75, and 78. Those principles are well established and conventional; there is no reason to suppose that they are not accepted in Alabama. Certainly they are included in the law of Arkansas. Cases cited." National Surety Corporation v. Inland Properties, Inc., D.C., 286 F.Supp. 173, 180 (1968).

It is unquestioned that Mr. Amsler prepared the minutes in representing his client for the meeting to be held on January 3, 1967, and tendered as prepared to Freeman C. Talley. It is undisputed that the proposed minutes were signed by both Talleys and his sister, Mrs. Baim, as directors, although it is obvious that some one or more of the signatures were obtained sometime after January 3, 1967. It is also established that the proposed minutes were to become a part of the records of the corporation. As Secretary Wilda Talley certified that they were on file in the Corporation Record Book. It is stipulated that when the Fowlers reacquired ownership of the stock no minutes were in the Corporation Record Book of Crystal Springs. What happened to the minutes which the Talleys and Mrs. Baim agreed to include in the record book is unexplained.

In Ark.Stats.1947 Ann. § 64-312 (1966 Replacement), it is provided:

> "Books and records.—A. Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors, etc."

Furthermore, under the Uniform Commercial Code, Ark.Stats.Ann. § 85-3-

302(1) (1961 Addendum), it is provided:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

"(b) in good faith; and

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Etc."

Although it is argued that there was a taking for value, the reasoning on the question of consideration is applicable to this provision to a holder in due course.

Obviously, the plaintiff not only had notice of the prior claim of the Fowlers to the shares of stock and thus the property of Crystal Springs, but of the pending litigation in the state court and the impending judicial sale February 22, 1968. However, notwithstanding, the fact that the plaintiff was not a party to that proceeding would not of itself preclude the plaintiff from proceeding with the recovery of the loss sustained as surety for Freeman C. Talley on his construction contracts. It remains that the plaintiff has the burden of proving that the purported transactions were the genuine actions of the corporate board before there can be reliance upon this or any other provision of the Uniform Commercial Code.

The defendants contend that the signing of the note and mortgage by Freeman C. Talley, as president, of Crystal Springs Fishing Village, Inc., and Wilda Talley, as secretary, relied upon in this proceeding, was that of an accommodation maker. The defendants rely on the decision of Simmons National Bank v. Dilley Foundry Company, 95 Ark. 368, 130 S.W. 162 (1910), a case remarkably similar to the subject case. The Uniform Commercial Code adopted by the General Assembly of Arkansas in 1961, deals with this subject matter. Ark.Stats.Ann.1947, § 85–3–415 (1961 Addendum). As recently stated by the Supreme Court of Arkansas, it does not matter whether a party was an accommodation endorser. If he had been, knowledge of the other party that he was would not relieve him of liability. Rushton v. U. M. & M. Credit Corp., 245 Ark. 703, 707, 434 S.W.2d 81. Therefore, this contention of the defendants, under the circumstances in this case, cannot be sustained.

It is frankly stated in the defendants' reply brief that Crystal Springs and the Fowlers are not making an ultra vires defense under the provisions of Ark. Stats.Ann.1947, § 64–106 (1966 Replacement).

The defendants insist that due to the circumstances surrounding the transactions, and the reasons that motivated these actions, the signing of the note and mortgage by the Talleys as president and secretary of Crystal Springs did not create an enforceable obligation against Crystal Springs with resultant injury to the Fowlers. The Court agrees.

The Court is constrained to hold that National Surety has failed to carry its burden of proof as to the genuineness of the action of the Board of Directors in providing apparent authority and on the contrary the Court finds from the pleadings, stipulation of the parties, the entire record and from a preponderance of the evidence that the action of the Talleys in reaching an agreement with the attorney for the plaintiff, National Surety, prior to the abortive action and the questionable transactions between the Talleys and the plaintiff's attorney which followed over a period of more than four months, attempting to bind the corporation with purported former action on January 3, 1967, which obviously did not take place, failed to create an enforceable obligation against the corporation. This is further strengthened by the fact that both the Talleys and the attorney for the plaintiff were well aware of the prior interest of the Defendants Fowlers and attempted these transactions without notice to them or their knowledge that such action was proposed.

No corporation can be bound by simulated entries to the prejudice of

innocent third persons. When a corporation seeks to effectuate minutes or other entries of its records which purport to be regular records of the proceedings of the Board of Directors or Stockholders, it should offer for that purpose testimony of a conclusive character. Cf. Grand National Bank of St. Louis v. Taylor, supra, 176 Ark. pp. 6 and 7, 1 S.W.2d 818.

There is no evidence here that there was a meeting of the Board of Directors of the Crystal Springs corporation on January 3, 1967, if at all, whereby the apparent authority relied upon herein was authorized. On the contrary, the Talleys were unable to obtain the signature of Mrs. Baim on necessary instruments and deliver them to Attorney Amsler for the plaintiff until May 11, 1967. There is no evidence that Roy Bentley, owner of the additional 5 shares, was advised of these transactions at any time.

The Arkansas Supreme Court has held that:

"'In 2 C.J. 573, we find the following, which we believe a correct statement of the law as to apparent authority: "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."' [Pierce v. Fioretti, 140 Ark. 306, 215 S.W. 646.]

"And in 3 Am.Jur.2d, supra, section 78, it is said:

"'A third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers. The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises. * * *'

\* \* \* \* \* \*

"It is well established that the president of a corporation does not possess, merely by virtue of his office, unlimited authority to manage the affairs of the corporation or to bind it to any kind of contract which he may choose to make. 19 Am.Jur.2d. Corp. §§ 1169–1170. Generally, contracts of guaranty and suretyship not in regular line of corporate business cannot be made by corporate officers without express authority; ordinarily there is no apparent authority in officer to make such a contract." 19 Am.Jur.2d Corp. § 1183; 2 C.J.S. Agency § 106; National Surety Corporation v. Inland Properties, Inc., 286 F.Supp. 173, 181 (1968) (Affirmed Eighth Circuit 416 F.2d 457).

Furthermore, the Arkansas Supreme Court adopted the traditionally and well-established rule in Simmons National Bank v. Dilley Foundry Company, 95 Ark. 368, 371, 130 S.W. 162, 164, as follows:

"In the case of Central Trans. Co. v. Pullman's Palace Car Co., 139 U.S. 24, [11 S.Ct. 478, 35 L.Ed. 55] after reviewing the various decisions of the Supreme Court of the United States relative to the powers of corporations to make contracts, Mr. Justice Gray speaking for the court sums up the result as follows: 'The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a

corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: the obligation of every one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subjected to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. * * * These principles apply equally to companies incorporated by special charter from the Legislature and to those formed by articles of association under general laws.' The general rule is well settled that the power of a corporation to make and take contracts is restricted to the purposes for which it is created, and can not legally be exercised by it for other purposes. City Elec. St. Ry. Co. v. First Nat. [Exchange] Bank, 62 Ark. 33 [34 S.W 89]; Pittsburgh, C. & St. L. Ry. Co. v. Koekuk Bridge Co., 131 U.S. 371 [9 S.Ct. 770, 33 L.Ed. 157]; McCormick v. Market Nat. Bank, 165 U.S. [538] 550 [17 S.Ct. 433, 41 L.Ed. 817]; California Bank v. Kennedy, 167 U.S. [362] 363 [17 S. Ct. 831, 42 L.Ed. 198]."

Since the Court concludes that the plaintiff has failed to carry its burden of proof to establish by credible evidence that Crystal Springs Fishing Village, Inc., is liable under the circumstances related in this record and the Court finds that the execution of the note and mortgage by Crystal Springs Fishing Village, Inc., was an attempt to obligate the corporation on a contract under the circumstances described herein to relieve Talley of an individual obligation not in any way proven to be incidental to the operation or corporate powers of Crystal Springs, the plaintiff is not entitled to the relief sought in that such action did not create an enforceable obligation.

This memorandum incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

In accordance with this opinion, a judgment will be entered for the plaintiff against the defendants, Freeman C. Talley and Wilda Talley, and the complaint will be dismissed as to Crystal Springs Fishing Village, Inc., James M. Fowler and Mattie Fowler, and Arkansas Bank & Trust Company.